**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

| | | |
|---|---|---|
| ONIER OSWALDO VARGAS<br><br>*Plaintiff*,<br><br>v.<br><br>VIRGINIA MILITARY INSTITUTE, ET AL.,<br><br>*Defendants*. | ) | Case No. 6:25-cv-100 |

**DEFENDANTS VMI ALUMNI AGENCIES, VMI ALUMNI ASSOCIATION, VMI FOUNDATION, AND KEYDET CLUB'S BRIEF IN SUPPORT OF MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendants VMI Alumni Agencies ("VMI Alumni Agencies Board"), VMI Alumni Association ("VMIAA"), VMI Foundation, and Keydet Club (collectively the "Alumni Agencies"),[1] by counsel, file this Brief in Support of their Motion to Dismiss plaintiff Onier Oswaldo Vargas's ("Plaintiff") claims against them in his Amended Complaint.

## INTRODUCTION

The Amended Complaint fails to state a claim against the Alumni Agencies, and therefore should be dismissed as to them, for three reasons.

***First***, the 1411-paragraph Amended Complaint egregiously violates Rule 8 with extreme prolixity and impermissible "shotgun pleading." Absent short, plain, simple, concise, and direct pleading, it is unclear which of Plaintiff's factual allegations, if any, actually support claims of any

1 The defendants' names are presented as they appear in the Amended Complaint.

kind against the Alumni Agencies. This Court regularly dismisses such complaints that fail to put defendants on fair notice of a plaintiff's claims.

***Second***, the Amended Complaint fails to show how the Alumni Agencies were involved with—much less liable for—any of the claims brought. Boiled down, Plaintiff's verbose factual allegations describe an employment-related dispute with his former employer, the Virginia Military Institute ("VMI"), a state agency, wherein Plaintiff alleges that he was disciplined for ongoing performance issues, and that he responded by accusing specific VMI employees of waste and abuse. When the Alumni Agencies are mentioned (only 8 times in the 161-page "Factual Background" section), it is as background characters to this employment-related dispute. Indeed, Plaintiff's only attempt to rope the Alumni Agencies into the dispute is by suggesting that they acted "under color of state law," or that they "conspired" or engaged in a RICO enterprise with VMI—but those accusations are conclusory and factually unsupported.

***Third***, the Amended Complaint is riddled with pleading defects for every claim Plaintiff attempts to assert against the Alumni Agencies. For example, for his Section 1983 claims (Counts I and II), Plaintiff fails to plead his constitutional rights under the First and Fourteenth Amendment were violated. For his conspiracy claim (Count III), he provides no factual allegations of an "agreement" between the Alumni Agencies and VMI. And for his RICO claim (Count IV), he fails to plead the existence of a single predicate racketeering act—much less a pattern of such acts.

The history of this case shows that these pleading defects are not technicalities, but rather fundamental (and dispositive) flaws in his claims against the Alumni Agencies. Plaintiff filed his first complaint against the Alumni Agencies in November 2025. He amended the complaint in December 2025, adding almost 50 pages attempting to explain the bases for his claims. Yet even after that revision, his Amended Complaint fails to state any claim against the Alumni Agencies.

Because the Alumni Agencies had no involvement in Plaintiff's employment dispute with VMI, and because Plaintiff's claims are so spurious even after amendment, there is no reason to allow any further amendment, as it would be futile. Accordingly, the Alumni Agencies respectfully request that this Court dismiss all claims against them in the Amended Complaint ***with prejudice***.

## FACTUAL BACKGROUND

The "Factual Background" section of Vargas's Amended Complaint is a difficult read. It is extremely long, stretching from Paragraph 17 to Paragraph 1111 of the 1411-paragraph pleading. There are no subsections, headers, or other dividers providing a roadmap of his factual allegations, other than two headings near the end summarizing internet research about the Alumni Agencies and "UCMJ Jurisdiction." The "Factual Background" is also rife with redundancies,[2] irrelevant allegations,[3] ambiguities,[4] unsupported assumptions,[5] and legal conclusions.[6] Hundreds of

---

[2] *Compare, e.g.*, Amended Complaint ("AC") ¶ 793 ("The Plaintiff added that reviewing footage, selecting clips, and applying his editing approach required time, and reiterated his point that the expectations placed on him exceeded what could reasonably be completed within the available timeframe.") *with* AC ¶ 794 ("Concluding his remarks, the Plaintiff stated that reviewing footage, selecting clips, and applying his editing approach required a considerable amount of time and reiterated that Mr. Marcello's expectations were unattainable.").

[3] *E.g.*, AC ¶¶ 1097 (accusing VMI officials of "engag[ing] in cruelty, oppression, and maltreatment within the meaning of Article 93 of the Uniform Code of Military Justice"—an accusation untethered from any of his civil claims).

[4] *E.g.*, AC ¶¶ 968-971 (referring vaguely to an "unwanted physical contact" incident with no supporting factual detail).

[5] *E.g.*, AC ¶ 584 (alleging that a VMI employee's possible involvement with an alumni group created "***potential*** ethical and legal ***risks***," with some "***heightened likelihood***" of misappropriation of funds, procurement fraud, and bribery (emphases added)).

[6] *E.g.*, AC ¶ 517 ("[T]he Plaintiff met with Mr. Clark and Colonel Boobar to report a matter of public concern regarding the use of institutional facilities and resources. . . ."). *Urofsky v. Gilmore*, 216 F.3d 401, 406 (4th Cir. 2000) (en banc) ("Whether speech is that of a private citizen addressing a matter of public concern is a question of law for the court[.]").

paragraphs are nothing more than speaker-by-speaker narrativizations of recorded meetings, regurgitating Plaintiff's same grumblings over and over.[7] Relevant allegations, if any, are buried in an ocean of irrelevant details.

That said, the Alumni Agencies have done their best to review Plaintiff's rambling, verbose narrative and summarize it into a digestible format, accepting as true his factual allegations but not his legal conclusions and unsupported inferences. *E.g.*, *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (explaining the Rule 12(b)(6) motion-to-dismiss standard of review). For the Court's convenience, a detailed chronological summary of Plaintiff's allegations is attached as **Exhibit 1**. But for practical purposes, the following is a high-level summary of those allegations, which should be sufficient for ruling on this Motion.

### A. Summary of Factual Allegations

In March 2024, VMI's Athletics Department hired Plaintiff as its Director of Athletic Multimedia. *See* Amended Complaint ("AC") ¶¶ 17-23. Plaintiff's job duties included creating video content and producing live video broadcasts for sports-related events. AC ¶ 24. His direct supervisor was Phil Marcello. AC ¶ 19, 25. Plaintiff alleges that he disclosed a military-service-related disability to VMI, but does not allege any details about the disability. AC ¶¶ 27-30.

Plaintiff says VMI's audio-visual cables, which were used for ESPN broadcasts of sports events, were damaged. AC ¶¶ 46-48, 96. As a result of the damaged cables, several broadcasts were disrupted or canceled. AC ¶¶ 36-38, 96, 122-123, 124-129, 196-202, 203-208, 224-225, 230-236. Plaintiff submitted vendor proposals to Marcello, requesting new cables. AC ¶ 50, 59-60, 70-71, 94, 98-106, 119-120, 130, 146-155, 192-194. Marcello processed the proposals and ordered the requested cables, but Plaintiff alleges Marcello did so too slowly and halved the suggested

[7] *E.g.*, AC ¶¶ 322-499 (describing a single Human Resources meeting).



19505\0009\13189611v1

order. AC ¶¶ 210-219, 254, 658; *see generally* AC ¶¶ 356-428. *But see* AC ¶¶ 414-419 (alleging that Marcello blamed Plaintiff for the delay because Plaintiff "attempted to place an order without approval"). When the cables demanded by Plaintiff arrived, they were incompatible with VMI's broadcast equipment, so the broadcast problems persisted. AC ¶¶ 232-236.

Marcello scored Plaintiff's initial performance between 3 and 4 out of 5 on his first evaluation. AC ¶¶ 74-76. But by August 2024—and through October 2024—Marcello was repeatedly confronting Plaintiff about numerous performance issues, including Plaintiff missing operations team meetings, failing to fix broadcast problems, damaging broadcast cables, and not finishing video projects on time. AC ¶¶ 79-83, 84-93, 145, 156-163, 165-166, 167-185, 237-274. In particular, Marcello chastised Plaintiff for not completing a video project showcasing VMI cadets who were nominated for the Keydet Club's "Three-Legged Stool" scholarship. AC ¶¶ 39-44, 135-142, 167-185, 220, 226-230, 283-287. Plaintiff blamed his performance issues on being overworked (because his Director position was a one-man job) and being tied up troubleshooting the broadcast problems, which the new cables he requested had not fixed. *See, e.g.*, AC ¶ 80, 92, 167-185, 237-274, 292; *see also* AC ¶ 64 (explaining that the Director of Athletic Multimedia "historically . . . worked unassisted"); AC ¶¶ 61-69, 186-195, 275-278 (describing Plaintiff's solo work and requests for assistance).

Over time, Plaintiff's performance issues worsened, and on or about October 31, 2024, Marcello and VMI's Director of Intercollegiate Athletics Jamaal Walton filed independent complaints about Plaintiff with VMI's Human Resources (HR). AC ¶ 295. In response, Plaintiff claimed—for the first time—that he uncovered "potential" waste and abuse by Marcello. AC ¶¶ 295-299. He described it as "systemic shortcomings in technical understanding and managerial approaches that have hindered departmental performance and contributed concerns about

institutional fiscal responsibility." AC ¶ 304. Plaintiff's core claim, which evolved over time, was that Marcello "prioritized" completion of the Three-Legged Stool video project over fixing the broadcast equipment problems. AC ¶¶ 295-300, 301-308. To Plaintiff, this management decision evidenced some type of nefarious misappropriation of university resources, because the Three-Legged Stool scholarship is provided by the Keydet Club, a private entity. AC ¶¶ 295-299.[8]

The tension between Plaintiff and Marcello triggered a "formal mediation" with HR. *See generally* AC ¶¶ 322-499 (narrativizing the entire mediation).[9] During the mediation, Plaintiff again accused Marcello of prioritizing completing the Three-Legged Stool video project over fixing broadcast problems, as well as using an "aggressive" tone, providing no assistance, and moving Plaintiff's office. AC ¶¶ 327-349, 357-499. Marcello, in turn, accused Plaintiff of violating Athletics Department policies, not finishing sponsored video projects, and not following proper procedure for requesting time off. AC ¶¶ 350-499.

Plaintiff's performance issues did not improve. By his own admission, he violated Athletics Department policies, flouted video project deadlines, missed operations team meetings, and took unapproved vacation time. *E.g.*, AC ¶¶ 313, 350-355, 666-670, 676-683, 688-691. As a result, Marcello issued Plaintiff numerous "disciplinary reprimands." AC ¶¶ 666-670.

At the same time, Plaintiff escalated his claim of waste and abuse. He filed complaints with HR, VMI's Deputy Superintendent for Finance and Support (Dallas Clark), and VMI's Office of the Inspector General (OIG). AC ¶ 500, 550-589, 671-674, 695-696. Besides continuing to accuse

---

8 Around this time, Plaintiff was hospitalized for "continued sleep deprivation," which he attributes to overwork. AC 309.

9 The mediation was attended by Plaintiff, Marcello, Walton, and HR Director Valerie Stores. There are no allegations that anyone at the Alumni Agencies participated in or knew about this HR meeting or any other disciplinary proceeding or action involving Plaintiff—nor could there be, as none of the Alumni Agencies ever employed Plaintiff.

Marcello of waste and abuse for "prioritizing" the Three-Legged Stool video project, Plaintiff also said that he uncovered a "potential" bribery scheme on the Keydet Club's website, because the Club had "donor tiers" whereby large donors gained "access" to VMI Athletics Department leadership. AC ¶ 500, 521, 551-582. When asked by Clark to "identify the specific activities he had observed" showing bribery, Plaintiff pointed only to the donor tiers and a "Keydet Club leadership sticker" on the vehicle of Emily Fulton, VMI's Associate Athletic Director for Internal Operations. AC ¶¶ 532-546. Plaintiff submitted a written report to VMI's OIG listing these alleged "potential ethical and legal risks" with a "heightened likelihood" of misconduct. AC ¶¶ 582-586. He asserted that Marcello's disciplinary reprimands were "retaliation" for his complaints about perceived waste and abuse. AC ¶ 521, 697-714, 956-967, 990-991.

Plaintiff was eventually put on a Performance Improvement Plan. AC ¶¶ 715-831.[10] But his performance issues persisted, and he received further disciplinary reprimands leading to a "Notice of Improvement Needed/Substandard Performance." AC ¶¶ 832-834, 838-856, 867-935, 936, 938-944, 949, 973. He responded by reiterating his claims about perceived waste and abuse, bribery, and retaliation. AC ¶¶ 859-866.

This all came to a head on January 9, 2025, when an "unwanted physical contact" incident occurred between Plaintiff and Marcello, apparently resulting in criminal charges for both. AC ¶¶ 968-971, 974, 977-985, 1012-1014, 1016-1017, 1037-1038.[11] On the advice of VMI's Threat Assessment Team—which included VMI's chief of police, resident physician, HR director, chaplain, and general counsel—Plaintiff was administratively suspended and then trespassed from VMI's Post. AC ¶ 1021-1026, 1029-1030. Both VMI's OIG and HR concluded their investigations

---

[10] Around this time, Plaintiff sought medical treatment for sleep deprivation. AC ¶ 857.

[11] Around this time, Plaintiff sought medical treatment for sleep deprivation. AC ¶ 1018.

into Plaintiff's complaints, finding that he provided insufficient evidence of waste and abuse or bribery in the Athletics Department, or retaliation by any VMI employee. AC ¶¶ 993-994, 1032-1033. Plaintiff's employment was terminated on March 4, 2025. AC ¶¶ 1004-1011, 1034.

In April 2025, Plaintiff appeared in Rockbridge County General District Court on his criminal charge, but "[u]pon the advice of counsel," pleaded his Fifth Amendment right "to avoid self-incrimination in connection with the unwanted physical contact" incident. AC ¶¶ 1037-1038.

**B. "Operational Integration Between Public and Private Entities"**

At the tail end of the Amended Complaint's "Factual Background" section, Plaintiff provides a summary of his internet research on the Alumni Agencies, which he refers to as "Operational Integration Between Public and Private Entities." Plaintiff alleges that VMI is a state institution and the Alumni Agencies are private 501(c)(3) organizations. AC ¶¶ 1039-1041. In his view, however, the two are closely related for six reasons.

First, VMI's Superintendent and its Board of Visitors President are "Ex-Officio Non-Voting members" on "one or more" boards of the VMI Foundation, Keydet Club, and Alumni Agencies Board (Plaintiff provides no details of which boards). AC ¶ 1044. Second, the Alumni Agencies have advertised fundraisers during VMI sports game broadcasts. AC ¶ 1049. Third, the City of Lexington approved a conditional use permit for the Alumni Agencies under its "Educational Facility, College/University" zoning classification. AC ¶¶ 1050-1053. Fourth, members of VMI leadership like Walton have participated in Keydet Club fundraisers while wearing VMI uniforms. AC ¶¶ 1054-1060. Fifth, VMI has hosted job postings for the Alumni Agencies on its .edu website. AC ¶¶ 1061-1062. And sixth, VMI and the Alumni Agencies coordinate and pursue an aligned objective of fundraising. AC ¶ 1063.



19505\0009\13189611v1

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a). "This pleading standard 'demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Nanendla v. WakeMed*, 24 F.4th 299, 304-05 (4th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, "a complaint must contain sufficient ***factual*** matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 304-05 (emphasis added) (quoting *Iqbal*, 556 U.S. at 678). Put differently, "the factual content must 'allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "Labels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement will not suffice . . . ." *Id.* (citation omitted).

## ARGUMENT

### A. Plaintiff's claims should be dismissed for violating Rule 8.

At the threshold, Plaintiff's claims against the Alumni Agencies should be dismissed because his Amended Complaint is unnecessarily prolix and contains impermissible "shotgun" pleading, violating Rule 8 and obscuring the factual basis for his claims.

#### *1. Legal Standard*

Rule 8 requires a complaint to contain a "***short and plain statement*** of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2) (emphasis added), supported by "***simple, concise, and direct***" allegations, *id.* at (d)(1) (emphasis added). The purpose of this rule is twofold. First, it requires a complaint to "provide the defendant with 'fair notice of what . . . the claim is and the grounds upon which it rests.'" *Spencer v. Earley*, 278 F. App'x 254, 259 (4th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Second, it prevents



19505\0009\13189611v1

"unnecessary" prolixity in a pleading, which places "an unjustified burden on the court and the party who must respond to [it] because they are forced to select the relevant material from a mass of verbiage." *Sewraz v. Morchower*, No. 3:08cv100, 2009 U.S. Dist. LEXIS 6007, at *2 (E.D. Va. Jan. 28, 2009) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).

"Even *pro se* plaintiffs must recognize Rule 8's vision for a system of ***simplified pleadings*** that give notice of the general claim asserted, allow for the preparation of a basic defense, ***narrow the issues*** to be litigated, and provide a means for quick dispositions of sham claims." *Sewraz v. Guice*, No. 3:08-cv-35, 2008 U.S. Dist. LEXIS 65910, at *2 (E.D. Va. Aug. 26, 2008), *aff'd*, 318 F. App'x 228 (4th Cir. 2009) (citation omitted). "Without the guardrails of Rule 8, courts would be left to expend precious judicial resources sifting through narrative and hyperbole in an effort to identify and address the points a litigant endeavors to make, while also working to avoid the improper task of devising arguments on behalf of the overly verbose [*pro se*] litigant." *Almudhafer v. Spotsylvania Cty. Pub. Sch.*, No. 3:25-cv-1075, 2026 U.S. Dist. LEXIS 2891, at *2-3 (E.D. Va. Jan. 7, 2026).

To enforce Rule 8, courts may dismiss ***entire complaints*** that violate it. *North Carolina v. McGuirt*, 114 F. App'x 555, 558 (4th Cir. 2004) (per curiam). Indeed, courts in Virginia regularly dismiss complaints that are "grossly excessive in length,"[12] or that rely on "shotgun pleading," *i.e.*, rambling narratives interspersed with legal conclusions that fail to provide individual defendants

---

[12] *See, e.g.*, *Thousand Oaks Barrel Co. LLC v. Deep S. Barrels LLC*, No. 1:16-cv-1035, 2016 U.S. Dist. LEXIS 189422, at *2 (E.D. Va. Aug. 30, 2016) (dismissing a 1134-paragraph, 294-page complaint as "grossly excessive in length and prolixity," in violation of Rule 8) (collecting cases); *Caplen v. Sekas*, No. 1:23-cv-659, 2023 U.S. Dist. LEXIS 237975, at *2 (E.D. Va. July 5, 2023) (dismissing a 156-page complaint for "utterly fail[ing] to meet Rule 8's requirements" of a "short and plain statement of the claim").

with fair notice of the factual basis for claims.[13] *See, e.g., Almudhafer*, No. 3:25CV1075 (RCY), 2026 U.S. Dist. LEXIS 2891, at *3, *2 n.2 (dismissing a 176-page complaint with "convoluted and redundant narratives," and condemning "voluminous pleadings" drafted by artificial intelligence that are nothing more than a "computer generated morass" which "courts must wade through in construing claims").

Alternatively, courts may dismiss ***individual claims*** that violate Rule 8. *Inpatient Consultants of N.C., P.C. v. Goad*, No. 7:22-cv-00199, 2023 U.S. Dist. LEXIS 49515, at *1 (W.D. Va. Mar. 22, 2023) (Dillon, J.). For example, in *Cook v. Unisys Federal Government Group*, this Court dismissed a plaintiff's discrimination claims because her "rambling allegations and 'shotgun' approach to pleading" made it "virtually impossible to separate the legally significant [facts] from the legally insignificant facts . . . and then to match them with the claims purportedly made in the complaint." No. 7:14cv00579, 2015 U.S. Dist. LEXIS 130866, at *18 (W.D. Va. Sep. 28, 2015) (Urbanski, J.) (quoting *McGuirt*, 114 F. App'x at 558). The Court reasoned that the complaint's 52-page "factual section" required "both the court and the defendant to guess as to which facts concern[ed] which claims," *id.* at *6, and even relevant facts were "buried in pages of needless and irrelevant details." *Id.* This not only placed an "unjustified burden" on the Court and defendant to parse the plaintiff's allegations, but also failed to provide "proper notice of the factual basis for [the plaintiff's] claims." *Id.* at *14-15 (citation omitted).

---

[13] *See, e.g.*, *Fauber v. Commonwealth*, No. 3:10-cv-00059, 2010 U.S. Dist. LEXIS 125851, at *9 (W.D. Va. Nov. 30, 2010) (Moon, J.) (dismissing a complaint with "convoluted and redundant narratives and far-fetched legal conclusions" that rendered the complaint "nearly incomprehensible"); *Garris v. Ocwen Loan Servicing, LLC*, No. 1:14cv118, 2014 U.S. Dist. LEXIS 49275, at *6 (E.D. Va. Apr. 9, 2014) (dismissing a 45-page complaint with "no discernible structure" that consisted of "rambling narrative interspersed with . . . accusations of collective and individual wrongdoing by [the defendants]").

The Fourth Circuit has affirmed such discretionary dismissals under Rule 8. *See, e.g.*, *McGuirt*, 114 F. App'x at 558-59 (affirming dismissal of a 79-page complaint that was "long and complex," "filled with needless details," "fail[ed] to state its claims clearly enough for the defendants to know how to defend themselves," and "force[d] the reader to cross-reference the factual background section and wade indeterminately through the morass of superfluous detail"); *Sorto v. Autozone, Inc.*, 821 F. App'x 188, 195 (4th Cir. 2020) (Wynn, J., concurring) (explaining that the Fourth Circuit has affirmed dismissals of complaints "full of irrelevant facts that ostensibly apply to every asserted cause of action") (collecting cases).

***2. The Amended Complaint is extremely prolix and engages in "shotgun" pleading.***

Plaintiff's Amended Complaint violates Rule 8 in two ways.

First, the complaint is unnecessarily verbose. It spans 227 pages, 1,411 paragraphs, and (according to Microsoft Word) over 55,000 words—longer by word count than F. Scott Fitzgerald's *The Great Gatsby* and nearing the length of William Faulkner's *As I Lay Dying*. Skimming the complaint at a speed of 15 words-per-second takes over 1 hour to finish; actually reading it takes 3 hours, and analyzing its contents takes even longer. "To label this complaint as grossly excessive in length and prolixity is an understatement akin to calling Hurricane Katrina a rainstorm." *Thousand Oaks Barrel Co. LLC v. Deep S. Barrels LLC*, No. 1:16-cv-1035, 2016 U.S. Dist. LEXIS 189422, at *2 (E.D. Va. Aug. 30, 2016) (striking a 294-page, 1134-paragraph pleading for violating Rule 8). This overlength not only burdens the Alumni Agencies, it also buries Plaintiff's allegations against them in a mountain of verbiage.

Second, the Amended Complaint flouts Rule 8 with impermissible "shotgun pleading." *E.g., McGuirt*, 114 F. App'x at 559. Plaintiff uses an everything-but-the-kitchen-sink approach, overstuffing his pleading with wordy descriptions, irrelevant details, legal conclusions, and

references to unincorporated documents. The "Factual Background" section alone is 161 pages and 1096 paragraphs with no internal section headers (except near the end)—leaving both this Court and the Alumni Agencies "to guess as to which facts concern which claims." *Cook*, No. 7:14cv00579, 2015 U.S. Dist. LEXIS 130866, at *14 (citation omitted). And "[e]ven where relevant facts exist, they are buried in pages of needless and irrelevant details about" Plaintiff's "various interactions" with coworkers, managers, and leadership at VMI, with no indication as to which facts implicate which of the twelve claims or six defendants. *Id.* This shotgun approach does not give the Alumni Agencies fair notice of the factual basis for Plaintiff's claims against them.

Accordingly, this Court should dismiss all claims against the Alumni Agencies for violating Rule 8. Absent short, plain, simple, concise, and direct pleading, it is unclear which of Plaintiff's allegations, if any, actually support the claims against the Alumni Agencies.

### B. Plaintiff fails to state any plausible claims against the Alumni Agencies, because the Amended Complaint does not show that the Alumni Agencies were involved in the material factual allegations undergirding his claims.

The overriding theme of the Amended Complaint is Plaintiff's "ongoing conflicts related to management practices, and . . . issues encountered with [Marcello]." AC ¶ 304. In a nutshell, Plaintiff disagreed with Marcello's management style and decisions, including pausing orders on new broadcast cables and enforcing deadlines for video projects like the Three-Legged Stool scholarship project. Marcello, in turn, chastised Plaintiff for ongoing performance issues, such as skipping meetings, missing deadlines, and violating Department policies. Both Plaintiff and Marcello reported these concerns to VMI leadership. Tensions then escalated to a nondescript "unwanted physical contact" incident, after which Plaintiff was suspended, trespassed, and fired.

Plaintiff alleges no facts showing the Alumni Agencies' involvement in any of this. In fact—despite spanning 1094 paragraphs—the "Factual Background" section of the Amended

Complaint only mentions one of the four Alumni Agencies (specifically the Keydet Club), and only a handful of non-inculpatory times. The stark absence of any factual allegations against three of the Alumni Agencies, and the lack of any material factual allegations against the Keydet Club, means that Plaintiff has failed to state a "claim for relief" against them "that is plausible on its face." *Nanendla*, 24 F.4th at 304-05.

***1. Legal Standard***

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that ***the defendant*** is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556) (emphasis added). This means that "a complaint that does not allege any personal involvement by a defendant fails to state a claim against that defendant." *Sawyer v. S.W. of Va. Reg'l Jail*, No. 7:20-cv-00510, 2020 U.S. Dist. LEXIS 162905, at *5 (W.D. Va. Sep. 8, 2020) (Moon, J.) (citing *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017)).[14]

Along those lines, a complaint fails to state a claim when it contains only "collective allegations" against "all defendants," without identifying how each individual defendant personally interacted with the plaintiff or was responsible for the claimed wrongful conduct. *Langford v. Joyner*, 62 F.4th 122, 125 (4th Cir. 2023); *accord Polk v. Montgomery Cty.*, 548 F. Supp. 613, 614 (D. Md. 1982). "[S]pecific factual allegations for each defendant" are required because they "gives fair notice to that defendant of the plaintiff's claim and the underlying factual support." *Langford*, 62 F.4th at 125 (collecting cases). Put simply: a complaint must "minimally

---

[14] "When a complaint fails to allege any action by a defendant, it ***necessarily*** fails to 'state a claim for relief that is plausible on its face.'" *Muse v. Hagg*, No. 1:23-cv-01060, 2025 U.S. Dist. LEXIS 94030, at *6 (W.D. Tenn. May 16, 2025) (quoting *Twombly*, 550 U.S. at 570) (emphasis added).

apprise each defendant of who did what to whom and when." *Inpatient Consultants*, No. 7:22-cv-00199, 2023 U.S. Dist. LEXIS 49515, at *22 (quoting *Switzer v. Thomas*, No. 5:12-cv-00056, 2013 U.S. Dist. LEXIS 25755, at *17 (W.D. Va. Feb. 25, 2013) (Welsh, Mag. J.) (cleaned-up).

### 2. *Plaintiff never alleges the Alumni Agencies' involvement in perceived wrongful conduct.*

Plaintiff breezily claims that the Alumni Agencies violated his constitutional rights, conspired with VMI and its Board of Visitors to do so, and committed racketeering crimes with them. *See generally* AC at Counts I-IV. But his ***factual*** allegations show none of that. When the Alumni Agencies are mentioned (rarely), it is as background characters to Plaintiff's disputes with Marcello and others at VMI.

For example, Plaintiff claims in Count I that "[t]he Defendants' actions deprived [him] of [free speech] rights" under the First Amendment. AC ¶ 1118, 1121-1123. He alleges those "actions" included "disciplinary reprimands, performance documentation issued following his disclosures, administrative suspension, trespass restrictions, termination of employment, and separate criminal complaint initiated by [Marcello]." AC ¶ 1119. All those "actions," however, were taken, if at all, by employees of VMI—***not*** any of the Alumni Agencies. Indeed, ***only*** employees at VMI (as Plaintiff's former employer) could have initiated the disciplinary actions, and ***only*** Marcello (as a victim of the "unwanted physical contact" incident) could have brought the criminal complaint. Plaintiff's only hook attempting to pull the Alumni Agencies into these "actions" is a conclusory assertion that "the VMI Alumni Agencies acted jointly and in concert with VMI and the VMI Board of Visitors." AC ¶ 1117. Such a bald statement of collective liability is not enough. *Langford*, 62 F.4th at 125. The Amended Complaint is devoid of a single factual allegation showing that the Alumni Agencies knew about or participated in the perceived wrongful conduct.



19505\0009\13189611v1

Same with Plaintiff's claim in Count II. He contends that "[t]he Defendants, through [Marcello] and other institutional officials," terminated his employment at VMI without constitutionally-required due process by "initiating and relying on a series of adverse employment and criminal actions" following his reports of waste and abuse to Clark and VMI's OIG. AC ¶¶ 1131, 1133, 1146. As with Count I, this claim exclusively rests on actions by employees at VMI—***not*** any of the Alumni Agencies.

Plaintiff's claim in Count III fares no better. There, he accuses "[t]he Defendants"—again, collectively—of "enter[ing] into an agreement and mutual understanding among themselves" to violate his constitutional free-speech and due-process rights. AC ¶ 1154. But nowhere in the Amended Complaint does Plaintiff allege facts showing such an agreement. At most, Plaintiff provides a summary of internet research that, in his view, implies a relationship between VMI and the Alumni Agencies that could make them liable for VMI's actions, *e.g.*, AC ¶¶ 1039-1065—but that research does not suggest, let alone ***show***, that the Alumni Agencies participated in or agreed with VMI to violate Plaintiff's constitutional rights.

Plaintiff's claim in Count IV is similarly lacking. The entire claim hinges on an assumption that six entities—VMIAA, VMI Foundation, VMI Alumni Agencies Board, Keydet Club, VMI, and the VMI Board of Visitors—formed a racketeering enterprise because: (1) the Keydet Club and VMI Foundation provide large donors with an opportunity to participate in calls with VMI's Athletics Director and/or Superintendent, which Plaintiff describes as a "***potential*** bribery scheme," *see, e.g.,* AC ¶¶ 565 (emphasis added), 586, 1198-1221; and (2) the Keydet Club did not disclose this opportunity to alumni, *see, e.g.*, AC ¶¶ 1222-1233. But these allegations, even if true, do not show the Alumni Agencies' involvement in a racketeering enterprise. There are no factual allegations (nor could there be) that any of the Alumni Agencies actually paid or received bribes,

laundered monies, or committed fraud—only legal conclusions or unsupported conjecture that such crimes may have occurred. *See generally* AC ¶¶ 1198-1310; *Wag More Dogs*, 680 F.3d at 365. And Plaintiff's accusation that the Keydet Club failed to disclose its donor tiers to alumni is unsupported by any allegation showing misrepresentation, and belied by his own admission that the donor tiers were freely accessible "on the organization's website." AC ¶ 566.

At bottom, the Alumni Agencies are not genuine defendants in this case. They are only mentioned, individually or collectively, a handful of times in the 161-page "Factual Background" of the Amended Complaint.[15] Plaintiff alleges ***no*** actions by VMIAA, VMI Foundation, or the VMI Alumni Agencies Board. And he seeks to rope in the Keydet Club by alleging that (1) Marcello assigned Plaintiff a video project related to the Club's Three-Legged Stool scholarship, (2) VMI employee Fulton had a Keydet Club bumper sticker, and (2) the Club had donor tiers that Plaintiff theorizes were a "potential bribery scheme." All this exemplifies that Plaintiff's real dispute, if any, is simply how VMI employees responded to his employment-related performance issues.

* * *

[15] *See* AC ¶ 18 (noting that Plaintiff met with an unnamed "representative from the VMI Alumni Agencies"); ¶¶ 39-45 (describing the Keydet Club's "Compete to Win" fundraising event and video project); ¶¶ 124-134 (describing an email from Keydet Club's Director of Digital Content to Plaintiff and Marcello about the Club's and VMI Foundation's advertisements during football games); ¶¶ 135-142 (describing the Three-Legged Stool scholarship banquet and Plaintiff's video project about scholarship nominees); ¶¶ 525-547 (stating that Plaintiff told Clark and Boobar about the "close relationship between" VMI and the Alumni Agencies, the Keydet Club's donor tiers, and Fulton's Keydet Club bumper sticker); ¶¶ 582-86 (describing the Keydet Club's donor tiers); ¶ 925 (stating that Plaintiff told HR that Marcello prioritized the Three-Legged Stool video project over other work); ¶¶ 1039-1065 (collecting internet research about the relationship between VMI and the Alumni Agencies); ¶¶ 1074-1080 (alleging that the VMI Foundation and Keydet Club have donor tiers "open to the general public"); ¶¶ 1081-1091 (accusing VMI leadership of UCMJ violations relating to "preserv[ing]" the Alumni Agencies' fundraising practices); *see also* AC ¶¶ 220, 226-229, 266-271, 276, 283-297, 394-395 (referencing the Three-Legged Stool scholarship video project).

For this reason alone, this Court should dismiss the Amended Complaint as to each of the four Alumni Agencies defendants. Further, dismissal should be ***with prejudice***, because no amendment could transform Plaintiff's garden-variety employment-related dispute into viable claims against any or all of the Alumni Agencies. *Morefield v. Bailey*, 959 F. Supp. 2d 887, 907 (E.D. Va. 2013) ("[W]here amendment is futile, courts have exercised their discretion to deny leave to amend and dismiss with prejudice.").

**C. Plaintiff fails to state any plausible Section 1983 claims against the Alumni Agencies.**

Three of Plaintiff's claims against the Alumni Agencies are brought pursuant to 42 U.S.C. § 1983 ("Section 1983"). These claims hinge on the Alumni Agencies either acting "under color of state law" or conspiring with a state actor (*e.g.*, VMI or its Board of Visitors) to do so. But Plaintiff adequately pleads neither.

***1. The Amended Complaint contains insufficient factual allegations to show that any of the Alumni Agencies acted under color of state law.***

For Plaintiff's substantive Section 1983 claims in Counts I and II to survive dismissal, the Amended Complaint must contain facts showing that one or more of the Alumni Agencies violated Plaintiff's constitutional rights while acting "under color of state law." It does not.

a. <u>Legal Standard</u>

To plead a Section 1983 claim, "a plaintiff must aver that a person [1] acting under color of state law [2] deprived him of a constitutional right or a right conferred by a law of the United States." *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615-16 (4th Cir. 2009) (citation omitted).

The "under-color-of-state-law element . . . excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *Id.* (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)). Consequently, a Section 1983 defendant "must either be a state actor or have

a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions." *Id.* (citation omitted). "[P]rivate activity will generally not be deemed 'state action' unless the state has so dominated such activity as to convert it to state action: 'Mere approval of or acquiescence in the initiatives of a private party' is insufficient." *Id.* (citations omitted) (alteration in original).

Courts use a variety of tests to determine whether a private entity's actions "may be fairly attributed to the state." *Robinson v. Davis*, No. 4:15-cv-00040, 2015 U.S. Dist. LEXIS 173267, at *13 (W.D. Va. Dec. 30, 2015) (Kiser, J.) (collecting cases). These tests consider facts such as whether a private entity uses power traditionally reserved to the state, or whether the entity violates constitutional rights jointly with the state. *Id.* (citations omitted). Here, Plaintiff relies on the pervasive-entwinement test articulated in *Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288 (2001): whether a private entity's "entwinement" with public institutions is so "pervasive" that "seemingly private behavior may be fairly treated as that of the state itself." AC ¶ 1065.

b. <u>This Court recently applied the "pervasive entwinement" test in *Respass v. VMIAA*, and found that the Alumni Agencies were not entwined with VMI.</u>

Directly on-point to the question of whether the Alumni Agencies are "pervasively entwined" with VMI is this Court's recent decision in *Respess v. VMIAA*, No. 6:24-cv-00028, 2025 U.S. Dist. LEXIS 60658, at *1 (W.D. Va. Mar. 31, 2025) (Moon, J.).

In *Respess*, a group of VMI alumni and VMIAA members ("plaintiffs"), represented by legal counsel, alleged that they had attempted to remove VMIAA's leadership for perceived mismanagement, but were thwarted. *Id.* at *9-10. Seven of the plaintiffs had also been suspended from VMIAA membership. *Id.* at *11-12. VMIAA asserted the suspension was the result of a

finding that those plaintiffs had misused an alumni email database; the plaintiffs claimed the suspension was retaliation for attempting to remove VMIAA's leadership. *Id.* at *11-15.

The plaintiffs sued VMIAA in this Court under Section 1983, claiming that the non-profit private entity violated their due-process rights under the Fourteenth Amendment and their free-speech, free-assembly, and voting rights under the First Amendment. *Id.* at *14-15. Their allegation that VMIAA acted "under color of state law" was premised on two contentions: (1) VMIAA was "pervasively entwined" with VMI and (2) VMIAA had a "symbiotic relationship" with VMI. *Id.* at *14-15, 16-17, 19-20. VMIAA moved to dismiss the Complaint, including the Section 1983 claims. *Id.* at *18.

In analyzing the motion to dismiss in *Respess*, this Court first explained the "pervasive entwinement" and "symbiotic relationship" tests. *Id.* at *21-22. The first test derives from the aforementioned *Brentwood Academy*, where the Supreme Court held that a non-profit high school athletics association acted "under color of state law" because 84% of its members were public schools, and each member school had a public official (*e.g.*, principal, superintendent) with voting powers in the association. *Id.* at *21 (citing *Brentwood Acad.*, 531 U.S. at 298-300). That meant there was "no recognizable association, legal or tangible, without the public school officials, who [did] not merely control but overwhelmingly perform[ed] all but the purely ministerial acts by which the association exist[ed] and function[ed] in practical terms." *Id.* at *21 (citing *Brentwood Acad.*, 531 U.S. at 299-300). The other under-color-of-state-law test derives from *Burton v. Wilmington Parking Authority*, where the Supreme Court held that a restaurant's lease of a parking space from a municipal parking authority put the two in "a position of interdependence," such that the restaurant's discriminatory use of the parking space was "under color of state law." *Id.* at *21-22 (citing *Burton v. Wilmington Park. Auth.*, 365 U.S. 716-17, 724-25 (1961)). For both tests, this

Court observed that the ultimate question is whether action by a private entity "may fairly be treated as that of the state itself." *Id.* at *23 citation omitted).

In *Respess*, this Court rejected the claims of "entwinement" and a "symbiotic" relationship between VMIAA and VMI and dismissed the Section 1983 claims. Following a robust analysis of the plaintiffs' detailed factual allegations, the Court found no "close nexus" between VMIAA and VMI because: (1) "VMI plays no role in VMIAA's corporate governance structure," (2) "VMIAA's fundraising does not suggest a 'symbiotic relationship' akin to the *Burton* case," and (3) "[a]llegations of VMI's involvement in [the plaintiffs'] alleged injuries by VMIAA [were] largely conclusory." *Id.* at *23-42. Further, the Court found that the corporate governance documents for all four Alumni Agencies (*i.e.*, VMIAA, VMI Foundation, Keydet Club, and the VMI Alumni Agencies Board) "show[ed] that VMI plays a very limited role in their leadership structures." *Id.* at *27.[16] Therefore, there was no factual basis for plaintiffs' claims that any of the Alumni Agencies acted "under color of state law." *Id.* at *41.[17] The Court therefore dismissed the Section 1983 claims with prejudice and without leave to amend.[18] No appeal was filed.

---

[16] The corporate governance documents were attached as exhibits to the Memorandum in Support of VMIAA's Motion to Dismiss the Amended Complaint. *See* ECF 16, *Respess et al. v. VMIAA*, No. 6:24-cv-28 (July 23, 2024).

[17] In *Respess*, VMIAA had also moved to dismiss the Section 1983 claims on other grounds, but there was no need to reach those additional arguments in light of the finding that VMIAA was not acting under color of state law.

[18] The *Respess* Court also declined to exercise supplemental jurisdiction over the plaintiffs' related state law corporate governance claims, and therefore dismissed the plaintiffs' entire amended complaint with prejudice. *Respess*, No. 6:24-cv-00028, 2025 U.S. Dist. LEXIS 60658, at *42-43. None of the dismissed state law claims were repleaded in state court or this Court.

c. Plaintiff does not allege any facts showing that the Alumni Agencies were "pervasively entwined" with VMI or otherwise acted "under color of state law"—and the Alumni Agencies' corporate governance documents show the opposite.

Plaintiff alleges no facts showing "pervasive entwinement"—let alone a "symbiotic relationship"—between any of the Alumni Agencies and VMI resulting in Section 1983 liability.

Unlike the *Respess* plaintiffs—whose complaint contained detailed allegations concerning the Alumni Agencies and their corporate governance structures, yet still failed to allege pervasive entwinement—Plaintiff alleges scant facts in his Amended Complaint showing any relationship between the Alumni Agencies and VMI. Specifically, Plaintiff alleges only the following:

- The Keydet Club advertised at VMI football games in 2024. AC ¶¶ 124-129, 1049.
- The Keydet Club has a Three-Legged Stool scholarship for VMI cadets, and Plaintiff was directed by Marcello to create a video about the cadets nominated for the scholarship. *E.g.*, AC ¶¶ 135-142.
- The Alumni Agencies fundraise monies that are donated to VMI, and two members of VMI leadership have participated in Keydet Club fundraisers. AC ¶¶ 525-547, 1054-1060, 1063.
- An associate director of VMI's Athletics Department had a bumper sticker for "Keydet Club leadership," AC ¶¶ 532-538—although Plaintiff admits that he does not know how she was involved with the Club, *see* AC ¶¶ 539-540.
- VMI's Superintendent and its Board of Visitors President are "Ex-Officio Non-Voting members" on "one or more" boards of the VMI Foundation, Keydet Club, and the VMI Alumni Agencies Board. AC ¶ 1044.
- VMI has posted Alumni Agencies job postings on its .edu website. AC ¶¶ 1061-1062.
- The City of Lexington approved a conditional use permit for the Alumni Agencies classified as "Educational Facility, College/University" in January 2025. AC ¶¶ 1050-1053.

None of these allegations, alone or in the aggregate, exemplify such a close nexus between Alumni Agencies and VMI that the private entities' actions "may fairly be treated as that of the state itself." *Respess*, No. 6:24-cv-00028, 2025 U.S. Dist. LEXIS 60658, at *23. To be sure, the gist of these allegations is that the Alumni Agencies and VMI "align[]" on a similar objective:



19505\0009\13189611v1

fundraising for the institute. AC ¶ 1063. But, as the Fourth Circuit has warned, a state entity's "[m]ere approval of or acquiescence in the initiatives of a private party" is "insufficient" to show that private action is under color of state law. *Wahi*, 562 F.3d at 615-16; *accord Respess*, No. 6:24-cv-00028, 2025 U.S. Dist. LEXIS 60658, at *22.

Further, as this Court found in *Respess*, the corporate governance documents for all four Alumni Agencies unequivocally show that their "governance structures . . . are inconsistent with [Plaintiff's] contention that VMI is 'pervasively entwined' with these groups." *Respess*, No. 6:24-cv-00028, 2025 U.S. Dist. LEXIS 60658, at *34. Even "the formal presence that VMI is provided in some of the entities," *id.*—such as "ex officio" positions on boards, *see* AC ¶ 1044—"is curtailed by the fact that several of these positions lack voting power." *Respess*, No. 6:24-cv-00028, 2025 U.S. Dist. LEXIS 60658, at *34. Those corporate governance documents, which are publicly available, have not been materially changed since *Respess* was decided.

For this reason alone, Plaintiff's Section 1983 claims should be dismissed for failure to state a claim. And dismissal should be ***with prejudice***, as the Alumni Agencies' corporate governance documents indisputably counter Plaintiff's pervasive entwinement theory of Section 1983 liability—as this Court found in *Respass*.

***2. The Amended Complaint lacks sufficient factual allegations to show that the Alumni Agencies "conspired" with a state entity.***

For Plaintiff's Section 1983 ***conspiracy*** claim in Count III to survive dismissal, the Amended Complaint must show "agreement" and "concerted action" between the Alumni Agencies and a state entity like VMI. It does not.

a. <u>Legal Standard</u>

A plaintiff suing a private entity for conspiracy under Section 1983 must plausibly allege that the private entity "acted jointly in concert" with a state entity. *Lawson v. Caesars Va., LLC*,



19505\0009\13189611v1

No. 4:25-cv-00035, 2025 U.S. Dist. LEXIS 260806, at *15 (W.D. Va. Dec. 17, 2025) (Cullen, J.) (citation omitted); *accord Barrett v. PAE Gov't Servs.*, 975 F.3d 416, 434 (4th Cir. 2020). "This is a weighty burden." *Barrett*, 975 F.3d at 434 (citation omitted). The plaintiff "must plead facts amounting to more than 'parallel conduct and a bare assertion of conspiracy. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.'" *Id.* (quoting *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556-57)). Put differently, the plaintiff's "factual allegations must plausibly suggest agreement, rather than being merely consistent with agreement." *Id.* (citation omitted).

The Fourth Circuit's decision in *Barrett* is on-point. There, the plaintiff's employer, PAE, called the police after the plaintiff exhibited bizarre behavior at work. 975 F.3d at 422-24. Police officers interviewed plaintiff, then initiated an emergency custody order, and the plaintiff was evaluated by the Virginia Department of Health Professions. *Id.* at 422, 424-427. The plaintiff sued PAE and its employees (private actors) and various police officers and mental health examiners (public actors) under Section 1983, alleging that they conspired together to intentionally violate her constitutional rights. *Id.* at 428, 434-35. The district court dismissed the plaintiff's claims, and the Fourth Circuit affirmed, finding insufficient allegations that the defendants "acted jointly in concert" to deprive the plaintiff of her rights. *Id.* at 434, 436 (citation omitted). For example, the plaintiff "set forth no factual allegations that might explain why the police officers would enter into such an agreement with the PAE defendants to intentionally violate plaintiff's constitutional rights." *Id.* at 435, 436. Also, the mere fact that the police ***met*** with PAE employes "prior to and during their interview of plaintiff" did not "plausibly suggest ***agreement***" between the defendants.

*Id.* at 435. The meetings "were consistent with the normal interaction between the police and citizenry when a complaint is investigated." *Id.*

b. Plaintiff never alleges any "agreement" between the Alumni Agencies and a state entity.

Like in *Barrett*, Plaintiff has failed to allege any facts showing ***agreement*** between the Alumni Agencies and a state entity, like VMI, to violate his constitutional rights. He alleges no joint action between the defendants directed at him, and fails to explain "why [the Alumni Agencies] would enter into such an agreement with [VMI] to intentionally violate [his] constitutional rights." *Barrett*, 975 F.3d at 435. In fact, it appears that his entire conspiracy claim rests on the same basis as his color-of-state-law claim: an assumption that because the Alumni Agencies and VMI work cooperatively in fundraising to support VMI, they must "act[] jointly and in concert" as it relates to his employment. *E.g.*, AC ¶ 1153. Such a "conclusory allegation of agreement at some unidentified point" is insufficient to show conspiracy. *Barrett*, 975 F.3d at 434.

Therefore, Plaintiff's Section 1983 conspiracy claim must be dismissed for failure to state a claim.

***3. The Amended Complaint also lacks sufficient factual allegations to show any violations of Plaintiff's constitutional rights.***

Finally, ***even if*** the Court were to find that Plaintiff has adequately alleged that the Alumni Agencies acted under color of state law or conspired with VMI to take certain actions, Plaintiff inadequately alleges that those actions violated his constitutional rights.

a. No First Amendment violation.

For starters, Plaintiff's claim in Count I that the Alumni Agencies violated his First Amendment rights fails because Plaintiff does not show that he engaged in "constitutionally protected" speech. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 537 (4th Cir. 2017). The First

Amendment protects speech by a public employee on "matters of public concern," ***not*** speech on "personal grievances, complaints about conditions of employment, or expressions about other matters of personal interest." *Carey v. Throwe*, 957 F.3d 468, 475 (4th Cir. 2020) (cleaned-up). Here, considering the entirety of the Amended Complaint, it is clear that Plaintiff's allegations about alleged waste, abuse, and bribery are actually just reworded complaints about Marcello and his management style and decisions. For example, when Plaintiff alleges he first reported "misuse of public resources" to HR, *see* AC ¶¶ 295-299, his factual basis for that report was that Marcello's "managerial approaches . . . hindered departmental performance" and conflicted with Plaintiff's personal opinions on prioritizing work projects, *see, e.g.,* AC ¶¶ 300-304.

Plaintiff also fails to show a sufficient "causal relationship" between his speech and disciplinary action against him. *Booker*, 855 F.3d at 537. By his own admission, Plaintiff had numerous performance issues, resulting in reprimands and HR complaints, before he first accused Marcello of waste and abuse.[19] As alleged, those performance issues persisted for months, culminating in an "unwanted physical contact" incident and Plaintiff's firing. At the same time, the Complaint makes clear that VMI investigated Plaintiff's accusations, with both HR and VMI's OIG conducting separate inquiries. These non-conclusory and non-speculative factual allegations show that Plaintiff was disciplined and terminated for his own performance issues, not his speech.

[19] *E.g.*, AC ¶¶ 79-92 (delaying video projects), ¶ 145 (missing an operations team meeting), ¶¶ 146-150 (failing to fix broadcast problems), ¶¶ 146-163 (circumventing supervisor), ¶¶ 165-185 (missing meetings, making "independent decisions" without consulting supervisor, failing to ensure advertisements played during broadcasts, and delaying video projects), ¶¶ 196-208, 224-225 (failing to fix more broadcast problems), ¶¶ 220, 283-292 (missing video project deadline), ¶¶ 232-236 (ordering wrong equipment); *see also* AC ¶ 79-92 (verbal reprimand from Marcello), ¶¶ 156-163 (same), ¶¶ 167-185 (same), ¶¶ 237-274 (same), ¶¶ 283-292 (same), ¶ 295 (two HR complaints).

He alleges nothing "nudg[ing]" his claims of retaliation "across the line from conceivable to plausible." *Wag More Dogs*, 680 F.3d at 365.

b. No Fourteenth Amendment violation.

Plaintiff's claim in Count II that the Alumni Agencies violated his Fourteenth Amendment due-process rights fails because he never alleges deprivation of a constitutionally-protected "property interest." *Sunrise Corp. v. City of Myrtle Beach*, 420 F.3d 322, 328 (4th Cir. 2005) (citation omitted). Plaintiff says he was deprived of his "protected property interest in his continued employment" at VMI. AC ¶ 1131. But in Virginia, public employees are "presumed to be at-will unless there is evidence to the contrary," *Thompson v. Rockingham Cty.*, 663 F. Supp. 3d 509, 525-26 (W.D. Va. 2023) (Cullen, J.) (collecting cases), and at-will employees have "no legitimate expectancy of continued employment" and thus "no protectible property interest" in it, *Jenkins v. Weatherholtz*, 909 F.2d 105, 107-08 (4th Cir. 1990) (citation omitted); *see, e.g.*, *Mason v. Burns*, No. 23-1999, 2025 U.S. App. LEXIS 8212, at *2 (4th Cir. Apr. 8, 2025) (affirming dismissal of a complaint on this ground). Plaintiff alleges no facts rebutting the presumption that he was an at-will employee. *E.g.*, AC ¶ 20-26, 1131 (describing his job). Accordingly, he had no property interest in his employment protected by the Fourteenth Amendment.

Plaintiff's Fourteenth Amendment claim also fails because he received due process. *Sunrise Corp.*, 420 F.3d at 328. Plaintiff baldly states that he was denied "adequate notice" and "any meaningful opportunity to be heard." AC ¶ 1145. But that is rebutted by his own allegations that he received many notices of his performance issues—including disciplinary reprimands (both written and verbal), formal complaints, PIPs, and a Notice of Improvement Needed—as well as many opportunities to be heard—including numerous discussions with Marcello and Walton, meetings with HR, and reports to Clark, VMI's OIG, and the VMI Police. Put another way,

Plaintiff received all the process he was due to air his grievances against VMI and the Alumni Agencies. He did "not have a constitutional right to have his grievances resolved in his favor." *Whitlock v. Stephens*, No. 5:14-cv-94, 2016 U.S. Dist. LEXIS 169908, at *21 (E.D. Tex. Oct. 4, 2016).

* * *

At bottom, the Amended Complaint does not demonstrate Section 1983 liability. The Alumni Agencies neither acted "under color of state law" nor conspired with a state entity to violate Plaintiff's constitutional rights. As in *Respess*, this Plaintiff cannot amend his pleading to fix the under-color-of-state-law defect. Moreover, there is no factual basis to believe that Plaintiff's First or Fourteenth Amendment rights have been violated, or that any of the Alumni Agencies conspired with VMI to injure him. Accordingly, Counts I, II, and III should be dismissed ***with prejudice***.

**D. Plaintiff fails to state a plausible RICO claim against the Alumni Agencies.**

Plaintiff's Racketeering Influenced and Corrupt Organizations Act ("RICO") claim in Count IV fails because he has not alleged a "pattern of racketeering activity"—or indeed ***any*** racketeering activity—that injured his business or property. *See* 18 U.S.C. §§ 1962(c), 1964.

***1. Legal Standard***

To survive a motion to dismiss, Plaintiff "must show that each RICO defendant conducted an **enterprise** through a **pattern of racketeering activity**, and that [Plaintiff] was **injured in [his] business or property** as the result of such conduct." *Palmetto State Med. Ctr. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997) (citing *Sedima, SPRL v. Imrex Co.*, 473 U.S. 479, 496-97 (1985) and 18 U.S.C. § 1964(c)) (emphases added).

A RICO "**enterprise**" is an "ongoing organization, formal or informal, in which the various [defendants] function as a continuing unit." *Id.* (citation omitted). "**Racketeering activity**" is defined as specific "predicate acts" listed in the RICO statute. *Al-Abood v. Elshamari*, 217 F.3d 225, 238 (4th Cir. 2000) (citing 18 U.S.C. § 1961(1)(B)). To allege a "**pattern**" of racketeering activity, a plaintiff must show that "two or more predicate acts" were committed in a ten-year period, and the two acts were "related" and "constitute or pose a threat of continued criminal activity." *Id.* (citations omitted). This pattern requirement is "designed to prevent RICO's harsh sanctions, such as treble damages, from being applied to garden-variety fraud schemes," *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 181 (4th Cir. 2002), because RICO is not appropriate for "the general run of commercial and contractual disputes," *HMK Corp. v. Walsey*, 828 F.2d 1071, 1076 (4th Cir. 1987). Put simply: RICO liability is "reserved . . . for ongoing unlawful activities whose scope and persistence pose a special threat to social wellbeing." *Al-Abood*, 217 F.3d at 238; *accord U.S. Airline Pilots Ass'n v. AWAPPA, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (RICO is "concerned with eradicating organized, long-term, habitual criminal activity").

2. ***The Amended Complaint lacks sufficient factual allegations to show the commission of any "predicate acts of racketeering"—let alone a pattern of them.***

Plaintiff accuses the Alumni Agencies of committing the following "predicate acts of racketeering" under the RICO statute: (1) **Federal programs bribery** (18 U.S.C. § 666), AC ¶¶ 1198-1221; (2) **Mail or wire fraud** (18 U.S.C. §§ 1341, 1343), AC ¶¶ 1222-1233; (3) **Interstate or foreign travel in aid of racketeering** (18 U.S.C. § 1952(a)(3)), AC ¶¶ 1234-1242; (4) **Money laundering** (18 U.S.C. § 1956(a)(1)(A)(i) and (a)(2)(B)(i)), AC ¶¶ 1243-1257; (5) **Monetary transactions in criminally derived property** (18 U.S.C. § 1957), AC ¶¶ 1258-1262; (6) **Witness tampering** (18 U.S.C. § 1512(b)(1), (b)(2)(A), (b)(2)(B), and (b)(3)), AC ¶¶ 1263-1279; and/or (7) **Witness retaliation** (18 U.S.C. § 1513(e)), AC ¶¶ 1280-1310. While these crimes in theory

can qualify as predicate acts under the RICO statute, *see generally* 18 U.S.C. § 1961(1), Plaintiff fails to allege facts showing that the Alumni Agencies committed even one of these crimes—let alone a "pattern" of them.[20]

a. No Federal Programs Bribery

Plaintiff premises his allegation that the Alumni Agencies committed "bribery," in violation of 18 U.S.C. § 666, on the following: "the Keydet Club and VMI Foundation both maintain a donor courtesy reward system that provides tier-based access to institutional personnel and leadership figures acting in their official capacities, as well as privileged access to athletic facilities and events." AC ¶ 1199. But that is not bribery.

Section 666 proscribes "corruptly" soliciting, receiving, offering, or giving "anything of value" to a person with the intent to "influence or reward" a government entity's agent "in connection with any business, transactions, or series of transactions" of that government entity. *See* 18 U.S.C. § 666(a)(1)(B), (a)(2). The Fourth Circuit has held that the phrase "in connection with any ***business***" is a crucial limiter on the scope of the crime, and does ***not*** include innocuous actions by a government agent like "[s]etting up a meeting, hosting an event, talking to another official, [or] sending a subordinate to a meeting." *United States v. Lindberg*, 39 F.4th 151, 159, 175, 175 n.19 (4th Cir. 2022) (citation omitted).

Here, Plaintiff claims that donations to the Keydet Club gave donors access to VMI leadership at two different tiers. But even if that is true, that is ***not*** bribery under Section 666. Plaintiff describes one donor tier as "grant[ing] exclusive access to engage with VMI's athletic director including special invitations to periodic Zoom calls and other communications"; he

---

[20] To the extent Plaintiff is attempting to bring a RICO ***conspiracy*** claim, that fails for the same reason as his Section 1983 conspiracy claim.

describes the other tier as garnering an "invit[ation] to attend an exclusive, quarterly call with the superintendent," and "unparalleled access to the latest VMI news." AC ¶ 586. Neither type of "access" is any different than a politician "setting up a meeting" or "hosting an event" for donors, which is outside Section 666's scope. *Lindberg*, 39 F.4th at 175.

Also, Plaintiff's allegations that the Keydet Club offers donor-tier perks involving VMI athletics—like premium seats and parking for sports games, *e.g.*, AC ¶¶ 586, 1199—do not show corruption. Plaintiff never explains why these offerings are corrupt; he only avers that the Keydet Club (a private entity) provides the perks to donors, which is lawful.

Further, Plaintiff states in passing that "retired commissioned officers [at VMI] used their rank and institutional positions to gain private benefit through additional supplemental income and other rewards funded through the donor courtesy structure." AC ¶ 1080. But this statement is wholly uncorroborated by any factual detail. Nowhere in the Amended Complaint does Plaintiff show that VMI, its employees, or its leadership received any corrupt financial benefit from the Keydet Club's fundraising. *E.g.*, AC ¶¶ 1205-1208 (listing total annual donations, but not distinguishing between allegedly illegal and legal ones).

b. <u>No Mail or Wire Fraud</u>

Plaintiff's allegation that the Alumni Agencies committed the predicate act of mail or wire fraud is unsupported by any showing of fraud.

To charge mail or wire fraud, a plaintiff must allege both a "scheme to defraud" (*i.e.*, fraud) and the use of mail or wire communication in furtherance of that fraud. *United States v. Okun*, 453 F. App'x 364, 368 n.2 (4th Cir. 2011) (citations omitted). There are three types of "fraud" that a plaintiff can allege. The first and second are affirmative actions by the defendant: (1) **misrepresenting** material information or (2) actively **concealing** material information. *United*

*States v. Colton*, 231 F.3d 890, 898-99 (4th Cir. 2000). The third is a negative action: (3) "**omitting**" material information when there is a contractual, statutory, or common-law "duty," such as a fiduciary duty, to disclose the information. *Id.* at 899.

Regardless of which type, an allegation of fraud must "state ***with particularity*** the circumstances constituting fraud," pursuant to Rule 9. *MSP Recovery Claims, Series Ltd. Liab. Co. v. Lundbeck Ltd. Liab. Co.*, 130 F.4th 91, 106 n.9 (4th Cir. 2025) (quoting Fed. R. Civ. P. 9(b)) (emphasis added). This "particularly" standard is "steep." *Id.* at 106. It requires a plaintiff to "identify the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* (citation omitted).

Here, Plaintiff fails to allege—and especially not "with particularity"—that the Alumni Agencies misrepresented information in communications to alumni. He claims that the Alumni Agencies made "materially false and misleading representations" in "broadcast media, online platforms, and electronic communications," but the factual allegations he cites in support show neither. *See* AC ¶¶ 1222-1223 (citing AC ¶¶ 39-44, 124-129, 132-134, 279-280). For example, Paragraphs 124-129 allege that Keydet Club advertisements "were ***not*** appearing" during football game broadcasts, and Paragraphs 132-134 and 279-280 merely allege that the Club "request[ed]" its advertisements to be broadcasted. Paragraphs 39-44 do allege that a video associated with a Keydet Club fundraiser was "posted on the official VMI Wrestling Instagram account," but they do not allege that any alumni viewed the video or, more importantly, that the video contained any "***false representation***[]" at all. *MSP Recovery*, 130 F.4th at 106.

Plaintiff alternatively claims that the Keydet Club and VMI Foundation defrauded alumni by "omitting" information about donor tiers from fundraising communications. AC ¶¶ 1224-1231. But that's not fraud, for three reasons. First, and crucially, Plaintiff does not allege any "duty"

requiring the Alumni Agencies to disclose information about the donor tiers to alumni, so omitting that information from alumni communications is not fraud-by-omission. *Colton*, 231 F.3d at 899-901. Second, Plaintiff's allegation that information about donor tiers was "omitted" from alumni communications is undermined by his own admission that the Keydet Club posted the donor tiers on its website. AC ¶ 566. And third, even if the Club ***did*** omit donor tiers from alumni communications, Plaintiff does not explain why that omission would be material to donation decisions by alumni.

c. No Witness Tampering or Retaliation.

Plaintiff's charges that the Alumni Agencies committed the predicate acts of witness tampering, in violation of 18 U.S.C. § 1512(b), and witness retaliation, in violation of 18 U.S.C. § 1513(e), are so legless that they are both rebutted by his own allegations.

Subsection (b) of the **witness-tampering** statute prohibits two types of tampering. First, it proscribes intimidating, threatening, or corruptly persuading a witness involved in an "official proceeding" with "intent to influence, delay or prevent" the witness's testimony in that proceeding. 18 U.S.C. § 1512(b)(1). The term "official proceeding" is defined as a proceeding before a ***federal*** judge, court, grand jury, agency, or legislative body, or certain insurance proceedings. 18 U.S.C. § 1515(a)(1). Second, subsection (b) proscribes intimidating, threatening, or corruptly persuading a witness with the intent to "hinder, delay, or prevent" that witness from providing information to "law enforcement" about the "commission or possible commission of" federal crimes. 18 U.S.C. § 1512(b)(1).

Here, Plaintiff fails to allege that the Alumni Agencies committed witness tampering. For the first type of tampering, Plaintiff does not allege that he was a witness in an "official proceeding," as defined by statute. At most, he provided information about possible crimes to ***state***

agencies—specifically, VMI's OIG and HR—not federal ones. More importantly, for both the first and second types of tampering, Plaintiff does not allege that the Alumni Agencies intimidated, threatened, or corruptly persuaded him not to testify or report his suspicions to law enforcement. Indeed, he alleges the opposite. For example, Plaintiff admits that when he reported his suspicions of waste and abuse to Clark (a VMI employee), Clark immediately escorted Plaintiff to VMI's OIG. The OIG, as well as HR and others, encouraged Plaintiff's reports and investigated them seriously. And to the extent Plaintiff says he was "unable to provide full testimony or additional statements" about potential crimes to law enforcement because he "invok[ed] his Fifth Amendment right," AC ¶¶ 1271, 1038, his silence was the result of his own actions and defense counsel's advice—not the result of any intimidation, threat, or persuasion by the Alumni Agencies.

Similar to the witness-tampering statute, subsection (e) of the **witness-retaliation** statute only prohibits "knowingly, with the intent to retaliate," taking "harmful action" against a witness for "providing to a law enforcement officer any truthful information relating to the commission or possible commission of any federal offense." 18 U.S.C. § 1513(e).

Here, Plaintiff fails to allege that any of the Alumni Agencies knowingly, and with intent to retaliate, harmed him for reporting potential crime to a "law enforcement officer." In the entire Amended Complaint, Plaintiff only reported his suspicions to law enforcement once: on January 10, 2025, to VMI Police officers Knick and Henson. AC ¶¶ 977-983.[21] By then, VMI had already

---

[21] Plaintiff also reported his suspicions to VMI's OIG, but he (correctly) does not allege that she was "law enforcement." *Compare* Inspector General, VMI (accessed Feb. 13, 2026), https://www.vmi.edu/about/governance/administration/superintendent/inspector-general/ (explaining that the OIG "undertakes or supervises official investigations that are ***not specifically delegated to other agencies***" (emphasis added)) *with* VMI Police, VMI (accessed Feb. 13, 2026), https://www.vmi.edu/cadet-life/health-wellness-safety/vmi-police/ (explaining that criminal investigations and prosecutions are specifically delegated to VMI Police). This Court may take judicial notice of this information as it is contained on a state university website. *United States v.*

taken all of its disciplinary actions except termination against him, and the "unwanted physical contact" incident with Marcello had already occurred. The timing alone undermines Plaintiff's claim that VMI's disciplinary actions and Marcello's "physical contact" were retaliation for his report. And nowhere does Plaintiff allege or show how any of the Alumni Agencies knew about his report to VMI Police, let alone acted with intent to harm him for making the report.

d. No Travel in Aid of Racketeering, Money Laundering, or Monetary Transactions in Criminally-Derived Property.

The remainder of racketeering acts claimed by Plaintiff—Interstate/Foreign Travel in Aid of Racketeering, Money Laundering, and Monetary Transactions in Criminally-Derived Property—are insufficiently alleged because they all turn on the existence of underlying criminal activity, which, as shown, Plaintiff has not alleged. Further, Plaintiff alleges no facts showing that these crimes actually occurred. Instead, he alleges only that employees of the Alumni Agencies traveled, collected donations, and invested monies, and concludes—without any factual support—that such licit activity was carried out with criminal intent and purpose. Such "naked assertions" of wrongdoing are insufficient. *Nanendla*, 24 F.4th at 304-05.

***3. The Amended Complaint contains no factual allegations of injury to Plaintiff's business or his property.***

Finally, ***even if*** the Alumni Agencies engaged in a pattern of Federal Programs Bribery, Mail or Wire Fraud, Interstate/Foreign Travel in Aid of Racketeering, Money Laundering, or Monetary Transactions in Criminally-Derived Property, Plaintiff never alleges that the activity injured his "business or property." *Palmetto State*, 117 F.3d at 148; 18 U.S.C. § 1964. As alleged, those purported crimes were all directed at bribing VMI, defrauding donors, and manipulating

---

*Garcia*, 855 F.3d 615, 621 (4th Cir. 2017); *Jeandron v. Bd. of Regents of the Univ. Sys. of Md.*, 510 F. App'x 223, 227 (4th Cir. 2013).

illegitimate donations. None of that implicates Plaintiff, his "business" (if any), or his "property" (if any).

* * *

It is "axiomatic that without evidence of an underlying predicate act, a RICO claim cannot survive." *Edmonds v. Seavey*, No. 8-cv-5646, 2009 U.S. Dist. LEXIS 84397, at *24 (S.D.N.Y. Sep. 15, 2009) (collecting cases). Because Plaintiff fails to allege even a ***single*** predicate racketeering act—and certainly does not establish a "pattern" of such acts that injured his business or property—his RICO claim should be dismissed ***with prejudice***.

**CONCLUSION**

For the foregoing reasons, the Alumni Agencies respectfully request that this Court dismiss all claims against them ***with prejudice***.

Filed: February 26, 2026

Respectfully submitted,

VMI ALUMNI AGENCIES BOARD, INC.,
VMI KEYDET CLUB,
VMI FOUNDATION,
VMI ALUMNI ASSOCIATION

By counsel: */s/ Jessiah S. Hulle*

W. David Paxton (VSB No. 19798)
Jessiah S. Hulle (VSB No. 95828)
GENTRY LOCKE
10 Franklin Rd. SE, Suite 900
P.O. Box 40013
Roanoke, VA 24022
Phone: 540-983-9300
Fax: 540-983-9400
paxton@gentrylocke.com
hulle@gentrylocke.com

*Counsel for the VMI Alumni Agencies*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2026, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which provided electronic service to all counsel of record and *pro se* plaintiff Onier Oswaldo Vargas.

*/s/ Jessiah S. Hulle*____________________
Counsel