**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

| | | |
|---|---|---|
| ONIER OSWALDO VARGAS | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 6:25-cv-100 |
| | ) | |
| VIRGINIA MILITARY INSTITUTE, ET AL., | ) | |
| | ) | |
| *Defendants*. | ) | |

**DEFENDANTS VMI ALUMNI AGENCIES, VMI ALUMNI ASSOCIATION, VMI FOUNDATION, AND KEYDET CLUB'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Defendants VMI Alumni Agencies Board, Inc., VMI Alumni Association ("VMIAA"), VMI Foundation, and Keydet Club (collectively the "Alumni Agencies"), by counsel, file this Brief in Opposition to plaintiff Onier Oswaldo Vargas's ("Plaintiff") Motion for Preliminary Injunction against them.

## INTRODUCTION

Plaintiff's motion for a preliminary injunction against the Alumni Agencies fails every element of the *Winter* test.[1]

For starters, Plaintiff has not shown, through factual allegations and evidence, "that he is likely to succeed on the merits." Instead, in his motion and exhibits he merely rehashes the conclusory accusations from his Amended Complaint, charging the Alumni Agencies with waste, abuse, and criminal activity without actually showing that any misconduct occurred. All of his accusations rise and fall on unfounded speculation and are therefore likely to ***fail*** on the merits.

---

1 *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

Second, Plaintiff has not shown "that he is likely to suffer irreparable harm in the absence of preliminary relief." To begin, he never alleges harm to anyone; his concern about "ongoing RICO violations" is unfounded and speculative. But even if the Alumni Agencies were engaging in RICO activity (they are not), then that would harm VMI or other third parties, ***not*** Plaintiff. The denial of a preliminary injunction will cause him no harm at all.

Third, Plaintiff has not shown "that the balance of equities tips in his favor." To be sure, the equities favor ***denying*** a preliminary injunction. The purpose of the Alumni Agencies is to support VMI through, among other things, fundraising and investing. So granting Plaintiff's request to freeze or alter their fundraising and investing work would be devastating. In contrast, Plaintiff has nothing to gain from such a freeze.

And fourth, and importantly, Plaintiff has completely failed to show "that an injunction is in the public interest." The public interest strongly favors the Alumni Agencies continuing their good work in supporting VMI cadets and alumni and raising much needed financial support for a very small public college, ***not*** being forced to use donor funds to respond to Plaintiff's unfounded claims of criminal conspiracy.

Accordingly, this Court should deny Plaintiff's Motion for Preliminary Injunction.

## BACKGROUND

Plaintiff's 1411-paragraph Amended Complaint contains hundreds of allegations, but almost none against the Alumni Agencies. As detailed in the Alumni Agencies' Brief in Support of their Motion to Dismiss, *see* ECF 20, Plaintiff's actual dispute, if any, is with his former employer VMI.

Plaintiff formerly worked for VMI's Athletics Department as a Director of Athletic Multimedia, tasked with coordinating broadcasts of sports events and creating video content for

sports teams. According to Plaintiff, the Athletics Department had damaged broadcast cables, resulting in disruptions and cancellations of sports event broadcasts. ECF 20 at 4 (collecting citations to the Amended Complaint). Plaintiff reported the damaged cables, but VMI did not replace the damaged cables to his satisfaction. ECF 20 at 4-5. Around the same time, Plaintiff's work performance dipped, and he started missing meetings and deadlines, including deadlines relating to a video project showcasing VMI cadet-athletes nominated for the Keydet Club's Three-Legged Stool scholarship. ECF 20 at 5. Eventually, two members of Athletics Department leadership filed HR complaints against Plaintiff for worsening work performance. ECF 20 at 4. But rather than take responsibility for his performance issues, Plaintiff instead accused VMI and its employees of waste and abuse because the Athletics Department did not prioritize projects in the way that Plaintiff wanted. ECF 20 at 5.

Over time, Plaintiff's accusation evolved to also charge the Keydet Club with operating what Plaintiff perceived to be a "bribery" scheme at VMI. The entire basis for this accusation was that the Keydet Club had fundraising "donor tiers" whereby large donors could participate in calls with Athletics Department leadership, and that an Associate Athletic Director for Internal Operations had a "Keydet Club leadership sticker" on her vehicle. ECF 20 at 6.

Despite a striking lack of factual allegations against the Alumni Agencies, Plaintiff has brought four claims against them as a group: violation of First Amendment rights, under 21 U.S.C. § 1983 ("Section 1983"); violation of Fourteenth Amendment rights, under Section 1983; Section 1983 conspiracy; and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Plaintiff premises these claims on a simplistic, and misguided, theory that because the Alumni Agencies and VMI both work on fundraising for the college, they both must have

conspired together to retaliate against Plaintiff for reporting what he perceived as criminal activity. Plaintiff alleges no facts in his Amended Complaint showing or even implying that this is true.

Now Plaintiff has moved for a preliminary injunction against all defendants, including the Alumni Agencies, based on the same baseless assumptions of criminal activity and conspiracy. Three of his injunction requests relate entirely to VMI: he requests reinstatement of his employment, termination of the trespass notice against him, and "insulat[ion]" of "material witnesses" still employed by VMI. ECF 28 at 50-51. Two of his injunction requests appear to target one or more Alumni Agencies:

> Temporarily suspending donor-tier access privileges that provide exclusive or preferential access to institutional decision-makers in exchange for high-dollar contributions[.]
>
> Preserving donor derived assets and financial instruments traceable to the coordinated governance and financial mechanisms described herein, restraining capital expansion or procurement commitments that would further formalize or expand the challenged integration during litigation, and requiring maintenance and preservation of documents relating to agreements and affiliated entity agreements pending adjudication.

ECF 28 at 50-51. Put simply, it appears that Plaintiff wants this Court to: (1) temporarily suspend the Keydet Club's fundraising donor tiers, (2) freeze each of the Alumni Agencies' collecting and/or investing of donations, and (3) preserve each of the Alumni Agencies' fundraising and investing documents.

## LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy" that courts never award as of right. *Vitkus v. Blinken*, 79 F.4th 352, 361 (4th Cir. 2023) (citation omitted). To obtain a preliminary injunction, a plaintiff must satisfy the four-factor *Winter* test by demonstrating: "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of

preliminary relief, (3) that the balance of the equities tips in his favor, and (4) that an injunction is in the public interest." *Id.* (quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008)). This Court may "deny preliminary injunctive relief on the failure of any single *Winter* factor, without fully evaluating the remaining factors." *Id.* (citation omitted).

To satisfy the first factor, a plaintiff must make a "clear showing" with factual allegations and evidence that he is "***likely*** to succeed on the merits at trial." *2311 Racing LLC v. NASCAR, LLC*, 139 F.4th 404, 408 (4th Cir. 2025); *see also Mahmoud v. McKnight*, 102 F.4th 191, 203 (4th Cir. 2024), *vacated on other grounds by Mahmoud v. Taylor*, 606 U.S. 522 (2025) ("[A] plaintiff seeking a preliminary injunction generally cannot rely on mere allegations in the complaint but must come forward with some evidence showing a likelihood of success on the merits.").

To satisfy the second factor, a plaintiff must make a clear showing that "***he*** is likely to suffer irreparable harm" absent an injunction. *Vitkus*, 79 F.4th at 361 (emphasis added). "A plaintiff cannot satisfy this requirement by showing only that, in the absence of relief, a third party will be harmed." *Courtland Co. v. Union Carbide Corp.*, No. 2:21-cv-00101, 2021 U.S. Dist. LEXIS 65819, at *73-74 (S.D. W. Va. Apr. 5, 2021) (collecting cases); *see, e.g., Immigrant Legal Res. Ctr. v. City of McFarland*, 827 F. App'x 749, 751 (9th Cir. 2020) (vacating a preliminary injunction where the district court "focused its irreparable harm analysis on the prospect of harm to third parties" rather than "harm to the plaintiffs themselves"). The harm shown must be "neither remote nor speculative, but actual and imminent." *Mt. Valley Pipeline, LLC v. 6.56 Acres*, 915 F.3d 197, 216 (4th Cir. 2019). The harm shown must also be "irreparable," meaning that it "cannot be fully rectified by the final judgment after trial." *Id.* (citation omitted). So "financial losses that can be received by a prevailing party at the close of litigation ordinarily will not justify preliminary relief." *Id.* at 218.

## ARGUMENT

### A. Plaintiff is not entitled to injunctive relief under either Virginia Code § 40.1-27.3 or 18 U.S.C. § 1964(a).

As a threshold matter, Plaintiff posits two statutory bases for his request for a preliminary injunction against the Alumni Agencies: Virginia Code § 40.1-27.3 and 18 U.S.C. § 1964(a). *See* ECF 28 at 4, 9. Neither of these statutes supports his requests for injunctive relief.

First, Virginia Code § 40.1-27.3 is inapplicable to the Alumni Agencies. It allows a Court to enjoin "[a]n ***employer***" from retaliating against "an ***employee*** . . . regarding an employee's compensation, terms, conditions, location, or privileges of employment." Va. Code § 40.1-27.3 (emphases added). It is undisputed that none of the Alumni Agencies is or was an employer of Plaintiff. *See generally* ECF 4 (Amended Complaint) at ¶¶ 17-26 (alleging that VMI hired Plaintiff). Therefore, the Court cannot enjoin the Alumni Agencies under this statute.

Second, 18 U.S.C. § 1964(a) empowers the Court to "prevent and restrain" RICO violations—which are nonexistent here. As explained more fully in the Alumni Agencies' Brief in Support of their Motion to Dismiss, Plaintiff has failed to allege even a single predicate racketeering act to support his RICO claim. *See generally* ECF 20 at 27-35. And the new exhibits he attaches to his Motion for Preliminary Injunction ("Motion") offer no new support. There are therefore no RICO violations—by the Alumni Agencies or anyone else—requiring prevention and/or restraint with an injunction. *Bryant v. Woodall*, 622 F. Supp. 3d 147, 154 (M.D.N.C. 2022) ("[I]t is elementary that a court of equity will not grant an injunction to restrain one from doing what he is not attempting and does not intend to do." (quoting *Blease v. Safety Transit Co.*, 50 F.2d 852, 856 (4th Cir. 1931))).

The Court may deny the Motion on this ground alone.

**B. Plaintiff has not shown—through evidence or the factual allegations in his Amended Complaint—that his claims are likely to succeed on the merits.**

Plaintiff has not made a showing—let alone a "clear showing"— in his Motion that he will likely succeed on the merits of his claims.

The lion's share of Plaintiff's argument on this *Winter* factor is a rehashing of the conclusory accusations in the RICO claim of his Amended Complaint. *See* ECF 28 at 13-25. Along the way, he conflates his RICO claim with his Section 1983 claims, *see* ECF 28 at 24, as well as his employment retaliation claims against VMI, *see* ECF 28 at 18-22. Plaintiff requests that the Keydet Club suspend its fundraising donor tiers, and the Alumni Agencies freeze or "preserve" donation investment activity because he believes—with no evidence in support—that the donor tiers operate a "bribery" scheme that becomes more "integrated" over time. ECF 28 at 24.

Neither Plaintiff's Amended Complaint nor his rehashing of that pleading's conclusory allegations in his Motion and exhibits show a likelihood of success on the merits. Indeed, his arguments show the opposite: Plaintiff's claims are likely to ***fail*** on the merits because there is no factual basis for them. As fully argued in the Alumni Agencies' Brief in Support of their Motion to Dismiss, Plaintiff does not show that the Alumni Agencies were involved at all in any of the material factual allegations undergirding his claims. Also, Plaintiff fails to state any plausible claims against the Alumni Agencies under Section 1983 because (a) the Amended Complaint contains insufficient factual allegations to show that any of the Alumni Agencies acted under color of state law; (b) the Amended Complaint lacks sufficient factual allegations to show that the Alumni Agencies "conspired" with VMI; and (c) the Amended Complaint lacks sufficient factual allegations to show any violations of Plaintiff's constitutional rights. And Plaintiff fails to state a plausible RICO claim against the Alumni Agencies because (a) the Amended Complaint lacks sufficient factual allegations to show the commission of any "predicate acts of racketeering," let

alone a pattern of them; and (b) the Amended Complaint contains no factual allegations of injury to Plaintiff's business or his property caused by certain claimed predicate acts. *See, e.g.*, ECF 19 at 1-2 (summarizing the arguments in the Motion to Dismiss).

The exhibits attached to Plaintiff's Motion do not strengthen his request for a preliminary injunction. Exhibits 1 through 4 are simply written versions of Plaintiff's unfounded accusations of waste, abuse, and bribery from November and December 2024; they are no more helpful than the bald allegations in his Amended Complaint. Exhibit 5 is a compendium of Plaintiff's communications with VMI's Office of Inspector General, which illustrates how the OIG investigated his claims and found them to be unsupported. Exhibit 6 is related to the criminal case arising from a VMI employee touching Plaintiff's elbow during a disagreement—an incident wholly unrelated to the Alumni Agencies' fundraising and investing work. And Exhibit 7 largely contains documents already substantively detailed in the Amended Complaint (*e.g.*, the City of Lexington's conditional use permit for the Alumni Agencies, the Keydet Club's so-called "donor tiers"); and the only new documents do not support Plaintiff's Section 1983 and RICO claims against the Alumni Agencies. For instance, one document is an article about a new center for advancement being built at VMI, but there is no discussion in the article about waste, abuse, or bribery relating to Plaintiff's claims.

Accordingly, this Court should deny the Motion on this ground alone.

### C. Plaintiff has not shown that he will suffer real, non-speculative, irreparable harm if a preliminary injunction is denied.

Plaintiff has not made a clear showing that ***he*** will sustain irreparable harm absent a preliminary injunction against the Alumni Agencies. At most, he ***speculates*** about harm to ***third parties*** like VMI.

Plaintiff alleges that failure to enjoin the Alumni Agencies will result in only one type of harm: continued operation and "further integration" of RICO violations. ECF 28 at 25-26.[2] As he puts it: "Allowing continued execution of contracts, capital commitments, and governance integration during litigation materially alters th[e] status quo by replacing the pre-dispute operational baseline with newly embedded structural conditions. The longer these systems operate unrestrained, the more deeply integrated they become and the more disruptive and impractical later unwinding would be." ECF 28 at 26. At one point, he refers to this "harm" as "the ongoing use of public institutional resources in violation of Virginia Code § 18.2-112.1," which proscribes "misuse of public assets." ECF 28 at 29. Put simply, he thinks the Alumni Agencies are engaging in criminal activity with donations, so the donations should be frozen to prevent further criminal activity.

To begin, Plaintiff does not allege any harm to anyone. He baldly accuses the Alumni Agencies and VMI of engaging in criminal activity but offers no factual allegations or evidence in support of those charges. Any "harm" caused by bribery, fraud, money laundering, or any of the other crimes mentioned in his Amended Complaint is purely and utterly speculative, existing only in Plaintiff's imagination. *Mt. Valley Pipeline*, 915 F.3d at 216 (requiring irreparable harm to be "definite," not "speculative").

But even assuming that Plaintiff is correct that the Alumni Agencies, despite being four different nonprofit companies, are somehow misusing public funds at VMI (they are not), that does not harm ***Plaintiff***. Harm from waste, abuse, and bribery, if any, would be to VMI or third parties, not him. Even incidental harm to VMI employees or Virginia taxpayers would not affect Plaintiff;

---

[2] The other "harms" alleged relate to Plaintiff's former employment or VMI, such as continued employment retaliation and trespassing from VMI's campus, and continued supervision of "material witnesses" by VMI leadership. ECF 28 at 25-26, 27-28.

he is no longer employed at VMI and does not reside in Virginia. *E.g.*, ECF 4 at ¶ 6 (alleging that he resides in North Carolina). Moreover, even if there was any harm to Plaintiff, it would be his continuing loss of employment as Director of Athletic Multimedia—which is a financial loss that is by definition not "irreparable" harm. *Mt. Valley Pipeline*, 915 F.3d at 218 (explaining that financial loss is reparable with money damages); *Sampson v. Murray*, 415 U.S. 61, 89 (1974) ("[T]he temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury.").

The case law cited by Plaintiff does not move the needle in his favor. The first case, *United States v. Monsanto*, 491 U.S. 600 (1989), is entirely distinguishable. *Monsanto* held that a restraining order freezing a criminal defendant's seized funds for forfeiture under the Comprehensive Forfeiture Act of 1984 was not unconstitutional, *see id.* at 616—a strikingly different fact pattern and procedural context than is present here. The second case, *Grupo Mexicano De Desarrollo v. All. Bond Fund*, 527 U.S. 308 (1999), held that a district court "had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of [the plaintiff's] contract claim for money damages." *Id.* at 333. If anything, *Grupo Mexicano* cuts against Plaintiff, because it limits an injunction's ability to freeze a civil defendant's assets pending litigation. And the third case, *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940), simply held that a plaintiff may suffer "irreparable harm" if a defendant dissolves its assets in insolvency absent a preliminary injunction. *Id.* at 290. Here, in contrast, there is no allegation or evidence that any of the Alumni Agencies are at risk of insolvency, nor that pausing their fundraising and investing work would somehow mitigate that risk.

Accordingly, this Court should deny the Motion on this ground as well.

### D. A preliminary injunction will be devastating to the Alumni Agencies and VMI but will have no effect either way on Plaintiff.

The balance of equities weighs heavily in favor of ***denying*** a preliminary injunction.

The Alumni Agencies exist to support VMI and its alumni, including raising and investing donations for the college. That is especially true for the VMI Foundation and Keydet Club. The VMI Foundation is "[r]esponsible for fundraising and comprehensive giving options, including vital unrestricted funding, directed giving funds and scholarships, cadet life and leadership programs support, and planned giving," as well as "management of the VMI endowment." *About the VMI Alumni Agencies and Related Organizations* (2026), https://www.vmialumni.org/about/. Likewise, the Keydet Club is "[r]esponsible for the financial support of NCAA Division I cadet-athletes via scholarships, coaches' salaries, academic support, and operating budgets for VMI's 18 individual NCAA teams." *Id.* It goes without saying, then, that freezing the Alumni Agencies' ability to raise, invest, and spend donations—including the Keydet Club's use of so-called "donor tiers"—will undermine the ability of these nonprofits to raise donations needed to fund scholarships for cadets and ongoing daily operations at VMI, and could have devastating impact on VMI's intercollegiate athletic programs and the cadets who are part of them. In short, a preliminary injunction would be an immense and devastating burden on VMI and its cadets.

In contrast, Plaintiff has no real interest in freezing the Alumni Agencies' financial operations. Even if he were miraculously able to win every one of his claims against the Alumni Agencies, he would be entitled to nothing more than money damages for constitutional violations and RICO injuries. A preliminary injunction is unnecessary to reach that goal.

Further, Plaintiff admits that, with regard to the Alumni Agencies, he "seeks only to restrain ongoing statutory violations" by them. ECF 28 at 43-44. But the Alumni Agencies are not engaging in any statutory violations. Plaintiff levies conclusory accusations of criminal activity in his



19505\0009\13210098v3

Amended Complaint and Motion, but he fails to allege facts showing even a single statutory violation by the Alumni Agencies. For example, Plaintiff accuses the Keydet Club of operating a "potential" bribery scheme but fails to allege facts showing even a single payment under the perceived scheme resulting in an illegal quid pro quo. To the contrary, the allegations concerning tier donors establish only that the Keydet Club operates like every other fundraising nonprofit that openly offers and provides benefits to its donors based on their level of contribution. There is absolutely nothing illegal about a nonprofit saying that they will give donors increasing benefits and access to benefits when the donor makes a gift of an ever-increasing amount. If the practice of providing tiered donor benefits is illegal, then every fundraiser who works for local nonprofit public television or radio stations and regularly goes on-air raising money by offering levels of benefits in return for contributions will need to be arrested for bribery. In short, Plaintiff's allegations of illegal conduct by any of the Alumni Agencies are implausible. "Longstanding Fourth Circuit precedent holds that 'it is elementary that a court of equity will not grant an injunction to restrain one from doing what he is not attempting and does not intend to do.'" *Bryant v. Woodall*, 622 F. Supp. 3d 147, 154 (M.D.N.C. 2022) (quoting *Blease v. Safety Transit Co.*, 50 F.2d 852, 856 (4th Cir. 1931)). Applied here, it would be wholly inequitable for this Court to enjoin the Alumni Agencies from violating statutes that they are neither violating nor intending to violate.

Accordingly, this Court should deny the Motion on this ground as well.

**E. The public interest weighs heavily against a preliminary injunction.**

The public interest weighs heavily in favor of denying a preliminary injunction.

VMI operates in the public interest. It is a premier, public liberal arts college that graduates hundreds of cadet-scholars who work and lead throughout Virginia and the United States. As just one example, General Dan Caine, the current Chairman of the Joint Chiefs of Staff to the President,

is a 1990 graduate of VMI. In the same way, the Alumni Agencies operate in the public interest because they exist to support VMI's mission and operation in producing cadet-scholars. There is therefore a strong public interest in not freezing the fundraising and investing work of the Alumni Agencies, even temporarily.

In contrast, there is ***no*** public interest in Plaintiff's request. He wants to prevent the nonprofit Alumni Agencies from operating based on nothing more than his own unfounded accusation that they are engaging in a massive criminal conspiracy with VMI. ECF 28 at 45-48. That is wrong.

Plaintiff argues that there is "public interest . . . in preserving transparency and accountability within a state and federally funded institution." ECF 28 at 49; *see also* ECF 28 at 48. But even assuming that is true, Plaintiff has not shown any lack of transparency or accountability by VMI or the Alumni Agencies. Both VMI as a public institution and the Alumni Agencies as nonprofits publicly disclose their financial information. Indeed, Plaintiff has built his theories of criminal activity entirely on publicly available fundraising information and financial documents published by VMI and the Alumni Agencies. Freezing the Alumni Agencies' fundraising and investing work does not "preserv[e]" transparency and accountability; that already exists.

At bottom, it is not in the public interest to grant Plaintiff's Motion for Preliminary Injunction—just as it is not in the public interest for the Alumni Agencies to expend unnecessary time, effort, and expense responding to Plaintiff's Motion and the entirety of his frivolous and vexatious lawsuit. This Court should deny the Motion.

## CONCLUSION

For the foregoing reasons, the Alumni Agencies respectfully ask this Court to deny Plaintiff's Motion for Preliminary Injunction, and request that this Court make it clear to Plaintiff that if he continues to pursue baseless claims or file similar motions against the Alumni Agencies, it will come with financial consequences for him.

Filed: March 16, 2026

Respectfully submitted,

VMI ALUMNI AGENCIES BOARD, INC.,
VMI KEYDET CLUB,
VMI FOUNDATION,
VMI ALUMNI ASSOCIATION

By counsel: */s/ Jessiah S. Hulle*

W. David Paxton (VSB No. 19798)
Jessiah S. Hulle (VSB No. 95828)
GENTRY LOCKE
10 Franklin Rd. SE, Suite 900
P.O. Box 40013
Roanoke, VA 24022
Phone: 540-983-9300
Fax: 540-983-9400
paxton@gentrylocke.com
hulle@gentrylocke.com

*Counsel for the VMI Alumni Agencies*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 16, 2026, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which provided electronic service to all counsel of record and *pro se* plaintiff Onier Oswaldo Vargas.

*/s/ Jessiah S. Hulle*
Counsel